RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Kevin J. Larner, Esq. (KL-8627)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey  07962-1981
(973) 538-0800

-and-

500 Fifth Avenue, 49th Floor
New York, New York 10110
 (212) 302-6574

GRAY PLANT MOOTY
Scott T. Larison, Esq.
1010 W. St. Germain, Suite 500
St. Cloud, MN 56301
(320) 252-4414

*Co-Counsel for Wilmington Trust, National Association, Not in its Individual Capacity But Solely as Trustee Under Greenwich Investors XXXVII Pass-Through Trust Agreement Dated as of July 26, 2011*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ANTONELLA RIVARA,<br><br>                                    Debtor. | Chapter 11<br><br>Case No. 15-71506 (REG) |

**MOTION FOR ENTRY OF AN ORDER (I) GRANTING RELIEF**
**FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**
**OR, ALTERNATIVELY, DISMISSING DEBTOR'S BANKRUPTCY**
**CASE PURSUANT TO 11 U.S.C. § 1112(b) AND (II) WAIVING THE**
**FOURTEEN DAY STAY UNDER FED. R. BANKR. P. 4001(a)(3)**

Wilmington Trust, National Association, Not in its Individual Capacity But Solely as Trustee Under Greenwich Investors XXXVII Pass-Through Trust Agreement Dated as of July 26, 2011 ("Wilmington"), by and through its undersigned counsel, hereby submits the within Motion for an order granting Wilmington relief from the automatic stay pursuant to 11 U.S.C. § 362(d) or, alternatively, dismissing the bankruptcy case of the Debtor, Antonella Rivara (the "Debtor"),

pursuant to   11 U.S.C. § 1112(b) (the "Motion").   In support of the Motion, Wilmington respectfully represents as follow:

## PRELIMINARY STATEMENT[1]

The Debtor's bankruptcy filing is a classic example of a bad faith filing with only one purpose in mind: to delay a long awaited sheriff's sale of real property located at 249 Cleft Road, Mill Neck, New York (the "Property") owned by the Debtor and her husband, Anthony Rivara ("Mr. Rivara, and together with the Debtor, the "Rivaras").  The Debtor's filing comes less than a month after the Court dismissed Mr. Rivara's prior chapter 11 bankruptcy case, which was also filed to forestall a foreclosure sale with respect to the same property, and which the Court dismissed following a prolonged effort by Mr. Rivara to market and sell the property under this Court's supervision.   The facts and circumstances here are no different than those in Mr. Rivara's case.  Although Wilmington for many months agreed to forestall its remedies in Mr. Rivara's bankruptcy case, Wilmington is not willing to wait any longer, and instead requested Court intervention to protect Wilmington and its collateral.

Wilmington submits that it is entitled to relief from the automatic stay, pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2), to permit it to continue its pre-petition efforts to enforce its rights in and remedies against the Property, including but not limited to, enforcing its judgment and selling the Property at sheriff's sale.

Relief from the automatic stay is warranted under 11 U.S.C. § 362(d)(1) because "cause" exists to lift the automatic stay.   Among other things, cause exists to grant Wilmington relief from the automatic stay because: (i) the Debtor filed the bankruptcy case in bad faith and (ii) the Debtor cannot demonstrate that Wilmington is adequately protected.

---

[1] All capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them herein.

Relief from the automatic stay is also warranted under 11 U.S.C. § 362(d)(2) because the Debtor lacks equity in the Property and, as a result of Mr. Rivara's bankruptcy case, it has already been established that the Property is not necessary to an effective reorganization.

In addition to the fact that relief from the automatic stay is the appropriate remedy hereunder, dismissal of the Debtor's bankruptcy case is also appropriate pursuant to 11 U.S.C. § 1112(b) because: (i) there is both a substantial and continuing loss to or diminution of the estate <u>and</u> an absence of a reasonable likelihood of rehabilitation and (ii) the bankruptcy case was filed in bad faith.

For these reasons, and for those set forth herein, Wilmington respectfully requests that the Court grant Wilmington relief from the automatic stay to proceed to sheriff's sale, or alternatively, enter an order dismissing the Debtor's bankruptcy case.

## JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction to consider and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core proceeding pursuant to 28 U.S.C.§ 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

### A.      The Debtor's Bankruptcy Filing.

2.      On April 10, 2015 (the "<u>Petition Date</u>"), in a blatant bad faith attempt to prevent Wilmington from proceeding with its foreclosure sale (discussed in detail herein), the Debtor filed a bare-bones voluntary petition for relief with this Court under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), commencing the above-referenced bankruptcy case (the "<u>Bankruptcy Case</u>").

3.      Since the Petition Date, no statutory committees have been appointed in the Debtor's bankruptcy case.

**B.**     **KeyBank's Loan to the Debtor and Subsequent Assignment to Wilmington.**

4.     On or about July 12, 2002, KeyBank, National Association ("KeyBank") issued the Rivaras a home equity line of credit in the amount of $6,175,000 (the "Credit Line"), evidenced by the Key Equity Options Agreement (the "Options Agreement").  See Declaration of Myron Mulder, President of PrinsBank (the "Declaration") at ¶ 3.  A true copy of the Options Agreement is attached to the Declaration as Exhibit "A."

5.     To secure performance under the Credit Line, the Rivaras executed and delivered to KeyBank a mortgage against the Property pursuant to a Home Equity Line of Credit Mortgage, dated July 12, 2012 (the "Mortgage").  See Declaration at ¶ 4.  A true copy of the Mortgage is attached to the Declaration as Exhibit "B."

6.     On or about July 28, 2011, KeyBank assigned its interests in all of its loan documents with the Rivaras to Wilmington pursuant to an Allonge to the Options Agreement (the "Allonge") and an Assignment of Home Equity Line of Credit Mortgage (the "Assignment").  See Declaration at ¶ 5.  True copies of the Allonge and the Assignment are attached to the Declaration as Exhibits "C" and "D," respectively.

**C.**     **The Debtor's Default and Failure to Maintain the Property.**

7.     Since at least 2007, and continuing thereafter, the Rivaras failed to make the required monthly payments in connection with the Credit Line, which constitute events of default under the Option Agreement and the Mortgage.  See Declaration at ¶ 6.

8.     For some time, the Rivaras have also failed to pay real estate taxes on the Property, constituting further events of default.  As a result, current unpaid real estate taxes with respect to the Property total $746,903.98.  Due to the Rivaras' failure to pay real estate taxes, and in an effort to protect its collateral, Wilmington has advanced payments toward the payment of real estate taxes, totaling $1,021,357.68.  See Declaration at ¶ 7.

9.      Additionally, the Rivaras have failed to properly insure the Property, constituting further events of default.  As a result, Wilmington was forced to obtain forced placed insurance for the Property in January 2012, which forced place insurance remains in effect.  To date, Wilmington has paid $109,419.73 to insure the Property because the Rivaras have been unable or unwilling to insure the Property for more than three (3) years.  See Declaration at ¶ 8.

**D.      The Foreclosure Judgment.**

10.     As a result of the Rivaras' multiple defaults, KeyBank declared a default and, on November 20, 2008, commenced a lawsuit against the Debtor, Mr. Rivara and certain other parties in the Supreme Court of New York, County of Nassau (the "State Court"), bearing Index No. 20971/2008 (the "State Court Action"), wherein, among other things, KeyBank sought a foreclosure judgment with respect to the Property. See Declaration at ¶ 9.

11.     Thereafter, on August 27, 2013, the State Court entered a Judgment of Foreclosure and Sale (the "Judgment") in favor of Wilmington and against the Debtor, Mr. Rivara and certain other parties in the amount of $7,093,678.22, plus interest, fees and costs. See Declaration at ¶ 10.  A true copy of the Judgment is attached to the Declaration as Exhibit "E."

**E.      Mr. Rivara's Bankruptcy Filing.**

12.     On June 16, 2014, just prior to a scheduled sheriff's sale with respect to the Property, Mr. Rivara filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code, styled In re Anthony Rivara, Case No. 14-72784.  Mr. Rivara's bankruptcy case was admittedly filed in order to avoid Wilmington's foreclosure sale.  See Mr. Rivara's Chapter 11 Plan, Docket No. 45 in Case No. 14-72784, at ¶ 20.  See Declaration at ¶ 11.

4599661v1

13.      According to Mr. Rivara's bankruptcy schedules,[2] the value of the Property was $12,000,000.  In contrast, Mr. Rivara claimed in his bankruptcy schedules that the Property was encumbered by secured claims totaling $37,386,441.27, thereby causing the Rivaras to have substantial negative equity in the Property.  See Declaration at ¶ 12.  A true copy of Mr. Rivara's bankruptcy schedules are attached to the Declaration as Exhibit "F."

14.      Wilmington appeared in Mr. Rivara's bankruptcy case, and attempted to work with Mr. Rivara in an effort to liquidate the Property for the benefit of all creditors under the supervision of this Court.  In fact, Mr. Rivara's sole premise for his bankruptcy case was to sell the Property under this Court's supervision.   Throughout Mr. Rivara's bankruptcy case, Wilmington gave Mr. Rivara significant time to market and sell the Property, which efforts were eventually unsuccessful.  See Declaration at ¶ 13.

15.      In furtherance of Mr. Rivara's efforts to sell the Property, on November 5, 2014, Mr. Rivara filed a chapter 11 plan whereby he proposed to sell the Property.  See Mr. Rivara's Chapter 11 Plan, Docket No. 45 in Case No. 14-72784.  See Declaration at ¶ 14.

16.      Shortly thereafter, on November 10, 2014, Mr. Rivara filed a Motion for the Sale of the Property pursuant to section 363(b) of the Bankruptcy Code.  See Docket No. 47 in Case No. 14-72784.  See Declaration at ¶ 15.

17.      Ultimately, Mr. Rivara was unable to find a single buyer for the Property to effectuate his proposed plan or to move his motion to sell the Property before the Court.  See Declaration at ¶ 16.

18.      As a result, on February 11, 2015, after this Court and Wilmington had given Mr. Rivara nearly six (6) months to attempt to sell the Property and reorganize, the Court ordered

---

[2] As of the date hereof, the Debtor has not filed her schedules with the Court.

that Mr. Rivara's bankruptcy case be dismissed, but only after he submitted full payment of all quarterly fees due and owing to the Office of the United States Trustee.

19.     Mr. Rivara, however, failed to timely make the required payments to the Office of the United States Trustee, and after several weeks passed without paying his quarterly fees, the Court was forced to issue an Order to Show Cause as to why Mr. Rivara's bankruptcy case should not be converted to Chapter 7.  See Docket No. 66 in Case No. 14-72784.  Only then, under threat of conversion, did Mr. Rivara make the requirement payments to the Office of the United States Trustee.  As a result, Mr. Rivara's bankruptcy case was dismissed pursuant to an Order of this Court dated March 11, 2015.

20.     After dismissal of Mr. Rivara's bankruptcy case, the foreclosure sale of the Property was rescheduled for April 14, 2015.  Wilmington, however, continued to negotiate with the Debtor and Mr. Rivara in an effort to reach a consensual resolution prior to the scheduled foreclosure sale.  See Declaration at ¶ 18.

21.     Eventually, however, those negotiations reached an impasse and it became clear that the foreclosure sale would go forward as scheduled.  See Declaration at ¶ 19.

F.     **The Rivaras Attempt to Further Delay the Foreclosure Sale Through the Debtor's Bankruptcy Filing.**

22.     On April 10, 2015, just days prior to the rescheduled foreclosure sale, and in a blatant attempt to further stall the foreclosure sale and to prevent Wilmington from enforcing its rights with respect to its collateral, the Debtor filed a "bare bones" chapter 11 petition with this Court.  See Declaration at ¶ 20.  Notably, not only did the Debtor fail to file schedules but the creditors' matrix filed by the Debtor with her petition lists Wilmington as the only creditor.

23.     To date, no schedules or other pleadings have been filed in the Bankruptcy Case.[3]

---

[3] The Court has set April 24, 2015 as the deadline for the Debtor to file schedules.

24.     As a result of the Debtor's filing, the sheriff's sale which had been scheduled for April 14, 2015 was once again postponed. <u>See</u> Declaration at ¶ 20.

**G.     <u>Amounts Owed.</u>**

25.     As of the Petition Date, the Debtor owed Wilmington a total of $8,868,065.52, which balance includes unpaid principal, interest, and fees and costs, including costs incurred by Wilmington related to its payment of insurance and taxes with respect to the Property.  Interest continues to accrue on the outstanding balance at a per diem rate of $627.10.  <u>See</u> Declaration at ¶ 22.

26.     Additionally, as of the Petition Date, there exists an unpaid balance of $746,903.98 with respect to real estate taxes on the Property, which also continues to accrue interest. <u>See</u>  Declaration at ¶ 23.

**<u>RELIEF REQUESTED AND BASIS THEREFOR</u>**

**I.     WILMINGTON IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d).**

27.     Wilmington respectfully requests that the Court grant Wilmington relief from the automatic stay to allow Wilmington to continue its pre-petition efforts to enforce its rights and proceed to sheriff's sale of the Property:

28.     Section 362(d) of the Bankruptcy Code provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

(2) with respect to a stay of an act against property under subsection (a) of this section if:

> (A) the Debtor does not have any equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

29.    The requirements for lifting the stay pursuant to section 362(d) are disjunctive. Therefore, if the Court finds "cause" to grant relief from the automatic stay or finds that the Debtor has no equity in the property sought to be foreclosed, the court must lift the stay. See In re Diplomat Electronics Corp., 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988).

**A.    Cause Exists to Grant Relief from the Automatic Stay.**

30.    Section 362(d)(1) of the Bankruptcy Code provides that relief from the automatic stay shall be granted "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

31.    While the party seeking relief from the stay has the initial burden to show that "cause" exists, the party opposing stay relief has the ultimate burden of disproving the existence of cause. See Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999); In re Henderson, 245 B.R. 449, 455 (Bankr. S.D.N.Y. 2000).

32.    Wilmington respectfully submits that "cause" exists under 11 U.S.C. § 362(d)(1) to grant Wilmington relief from the automatic stay to continue its pre-petition efforts to enforce its rights against the Property and proceed to sheriff's sale.

**a.    The Debtor's Bad Faith Filing.**

33.    Since the inception of bankruptcy laws in the United States, "a good faith standard for the commencement, maintenance and confirmation of bankruptcy rehabilitation cases" has always been a requirement. In re HBA East, Inc., 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988). Such a requirement ensures that debtors who seek bankruptcy reorganization protection

do so for no purpose other than to accomplish the legitimate aims and objectives of the statue. Id. See also In re The Bridge to Life, Inc., 330 B.R. 351, 356 (Bankr. E.D.N.Y. 2005) ("The proposition that a debtor's lack of good faith in filing and maintaining a Chapter 11 case constitutes cause to dismiss the petition is well established.").

34.     Thus, it is well accepted that "[a]n automatic stay may be terminated for 'cause' pursuant to § 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith."  In re Phoenix Piccadilly Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988).  See also In re 234-6 West 22nd Street Corp., 214 B.R. 751, 756-61 (Bankr. S.D.N.Y. 1997); Manhattan King David Restaurant Inc. v. Levine, 163 B.R. 36, 40 (S.D.N.Y. 1993).

35.     In making this determination, courts consider numerous factors, including:

> (i)     whether the debtor filed its Chapter 11 petition as a tactic to obtain a litigation advantage;
>
> (ii)    whether the debtor's reorganization effort is essentially a two-party dispute; and
>
> (iii)   the nature and extent of the debtor's assets, debts and business operation.

HBA East Inc., 87 B.R. at 259.  See also The Bridge to Life, Inc., 330 B.R. at 357 (stating that a chapter 11 filing may not "be employed to obtain an upper hand or leverage in litigation with another party or to provide an alternate forum for such litigation.").

36.     Here, more than ample evidence exists to support a finding of bad faith on the part of the Debtor.  The Debtor filed the instant chapter 11 petition on the eve of a long-awaited sheriff's sale of the Property, and only a month after her husband's efforts to forestall the same foreclosure sale through a bankruptcy filing had failed.

37.     While the Debtor has not yet filed complete schedules, Wilmington is the sole creditor listed on the Debtor's creditors' matrix, and Wilmington believes the Property is the Debtor's primary – if not only – asset.

38.     In short, it appears that the Debtor's financial problems involve essentially a dispute between the Debtor and Wilmington, which can – and should – be fully resolved outside of the bankruptcy.  Moreover, Mr. Rivara already attempted **and failed** to use the bankruptcy process to reorganize essentially the same debts and to sell the Property.  In fact, Wilmington would have already foreclosed on the Property had the Debtor's filing not further forestalled the process.

39.     For these reasons, it is abundantly apparent that the Debtor's bankruptcy case was filed in bad faith, which constitutes "cause" to grant Wilmington relief from the automatic stay to allow Wilmington to enforce its rights against the Property and proceed to sheriff's sale.

**b.      The Debtor's Inability to Effectuate a Viable Reorganization.**

40.     Through Mr. Rivara's failed bankruptcy case, which lasted nearly seven (7) months, and through which Wilmington provided Mr. Rivara with every opportunity to market and sell the Property for the benefit of creditors, the Debtor and Mr. Rivara clearly demonstrated that a sale of the Property, in an effort to effect a viable reorganization, is not possible.

41.     As a result, in light of the fact that the Property is the Debtor's primary asset, it follows that the Debtor will not be able to reorganization in the current Bankruptcy Case.  The Debtor's inability to reorganize is, in and of itself, further "cause" for purposes of relief from the automatic stay.  See, e.g., In re Balco Equities Ltd., Inc., 312 B.R. 734, 752 (Bankr. S.D.N.Y. 2004).

### c.    Lack of Adequate Protection.

42.    "Cause," requiring the Court to lift the automatic stay, also includes lack of adequate protection of an interest in property.  See 11 U.S.C. § 362(g).

43.    The purpose of granting adequate protection is to ensure that the secured creditor receives the benefit of its bargain even though the debtor continues to use the collateral during the pendency of a bankruptcy case.  The legislative history of section 361 of the Bankruptcy Code provides:

> Secured creditors should not be deprived of the benefit of their bargain.  There be situations in bankruptcy where giving a secured creditors an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws.  Thus, this section recognizes the availability of alternative means of protecting a secured creditor's interest.  Though the creditor may not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 399 (1977).

44.    It has long been well established that, under the Bankruptcy Code, a secured creditor must be protected against decreases in the value of such secured creditor's interest in collateral due to the imposition of the automatic stay.  United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370 (1988) (interest is not adequately protected if the security is depreciating during the term of the stay); In re Domestic Fuel Corp. 70 B.R. 455, 463 (Bankr. S.D.N.Y. 1987) (a secured creditor is entitled to adequate protection for any decline in value the collateral may suffer after the automatic stay is in effect); Barclays Bank of N.Y. v.

Saypol (In re Saypol), 31 B.R. 796, 800 Bankr. S.D.N.Y. 1983) (Congress believed a decline in collateral value to be the decisive factor in determining the need for adequate protection).[4]

45.    Furthermore, a secured creditor also lacks adequate protection if there is a threat that the value of its collateral may decline.  See, e.g., In re Ellis, 478 B.R. 132, 140 (Bankr. N.D.N.Y. 2012); In re Elmira Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994); see also In re Jones, 189 B.R. 13, 15 (Bankr. E.D. Okla. 1995).

46.    For example, courts have held that stay relief is appropriate where the value of collateral is threatened by the failure to maintain property insurance, pay real estate taxes or keep the property in good repair.  See, e.g., Jones, 189 B.R. at 15; Elmira Litho, 1174 B.R. 902 n. 9.

47.    The burden of proving whether the moving party's interests are adequately protected is on the party opposing relief from the stay.  See In re Highcrest Management Co., 30 B.R. 776, 778 (Bankr. S.D.N.Y. 1983).  As a result, here, the Debtor has the burden of demonstrating that Wilmington's interest in the Property is adequately protected, and if the Debtor cannot do so, then the stay must be lifted.  See In re XB-1 Associates, 27 B.R. 827, 832 (Bankr. S.D.N.Y. 1983).

48.    Wilmington's interest in the Property is clearly not adequately protected.  Among other things, the value of Wilmington's collateral is threatened by the fact that the Debtor and Mr. Rivara have failed to pay real estate taxes and maintain necessary property insurance for an extended period of time.  As noted, to protect its collateral, to date, Wilmington has been forced

---

[4] In fact, the Fifth Amendment to the United States Constitution guarantees protection against any taking of private property without just compensation.  The scope of the Fifth Amendment reaches material impairment of collateral both in or outside of bankruptcy proceedings.  Chem. Bank v. Am. Kitchen Foods, Inc. (In re Am. Kitchen Foods, Inc.), Nos. BK75-294-302ND, 1976 Bankr. LEXIS 6, at *16 (Bankr. D. Me. June 8, 1976).  Thus, the Bankruptcy Code recognizes that, in its attempt to allow a debtor to rehabilitate itself, a secured creditor cannot be inequitably deprived of its property rights.  Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 589 (1935); In re Penn Cent. Transp. Co., 454 F.2d 9, 13 n.10 (3d Cir. 1972).

to pay $1,021,357.68 in unpaid real estate taxes with respect to the Property, and there currently

exists an unpaid balance of $746,903.98 with respect to real estate taxes on the Property, which

is accruing interest

49. Moreover, the Rivara have been unable or unwilling to insure the Property,

thereby forcing Wilmington to obtain a forced place insurance policy against the Property, which

policy has been funded by Wilmington for more than three (3) years, since January 2012.

50. For all of these additional reasons, further "cause" exists to grant Wilmington

relief from the automatic stay pursuant to § 362(d)(1).

**B.** **Wilmington is Entitled to Relief From the Automatic Stay Pursuant to 11
U.S.C. § 362(d)(2) Because There is no Equity in the Property and the Debtor
Cannot Reorganize.**

51. A principal ground for granting relief from the automatic stay is where a debtor

has no equity in the property and the property is not necessary to a reorganization which is in

prospect. See 11 U.S.C. § 362(d)(2). See also In re Pegasus Agency, Inc., 101 F.3d 882, 886

(2d Cir. 1996); In re Westchester Avenue Marina Realty, Inc., 124 B.R. 161, 165 (Bankr.

S.D.N.Y. 1991).

52. The movant bears the burden of demonstrating that the debtor lacks equity in the

property, while the debtor bears the burden of proof on all other issues, including that that the

property is necessary for an effective reorganization. 11 U.S.C. § 362(g)(1), (2). See United

States Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375

(1988).

**a.** **Lack of Equity in the Property.**

53. For purposes of section 362(d)(2) of the Bankruptcy Code, "equity" means the

difference between the value of the property and the total of the claims which it secures. See,

e.g., Westchester Avenue Marina Realty, Inc., 124 B.R. at 165; In re YL West 87th Holdings I

LLC, 423 B.R. 421, 428 (Bankr. S.D.N.Y. 2010).  See also In re Garsal Realty, Inc., 98 B.R. 140, 154 (Bankr. N.D.N.Y. 1989) (equity is "the remaining interest belonging to one who pledged or mortgaged his property, or the surplus value which may remain after the property has been disposed of for the satisfaction of liens.").

54.     In performing this analysis, value must be determined on a liquidation basis: the focus is on whether there exists any "'value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of all unsecured creditors.'"  In re Indian Palms Assoc., Ltd, 61 F.3d 197, 207 (3d Cir. 1995) (quoting Pistole v. Mellor (In re Mellor), 734 F.2d 1396, 1400 n.2 (9th Cir. 1984)).

55.     Here, the value of the Property is unquestionably exceeded by existing secured claims.

56.     While the Debtor has not yet filed her schedules, the schedules filed in Mr. Rivara's bankruptcy case provide ample support for the conclusion that no equity exists in the Property.   According to Mr. Rivara, the value of the Property was $12,000,000, while the Property was encumbered by more than $37,000,000 in secured claims.   See Declaration at Exhibit F.

57.     As a result, Wilmington submits that, based upon the representations made by Mr. Rivara, the secured claims encumbering the Property are vastly in excess of the value of the Property.  Therefore, the Debtor clearly lacks equity in the Property.

**b.      The Property is Not Necessary to an Effective Reorganization.**

58.     Once the moving party establishes that a debtor has no equity in the property, the burden shifts to the debtor to prove that the property is necessary for an effective reorganization.

See 11 U.S.C. § 362(g).  See also Timbers, 484 U.S. at 376.  As the Supreme Court explained in

Timbers:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is ***essential for an effective reorganization that is in prospect***. This means . . . that ***there must be a reasonable possibility of a successful reorganization within a reasonable time***.

Timbers, 484 U.S. at 375-76.  See also Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus

Agency, Inc.), 101 F.3d 882, 886 (2d Cir. 1996) (same); In re Kent Terminal Corp., 166 B.R.

555, 562 (Bankr. S.D.N.Y. 1995) ("[I]t goes without saying that an effective reorganization

cannot be based solely on speculation."); In re New Era Co., 125 B.R. 725, 730 (S.D.N.Y. 1991)

("mere dreams" of reorganization cannot sustain the automatic stay).

59.    Here, it is abundantly clear that there is no possibility that the Debtor will be able

to confirm a plan of reorganization within a reasonable period of time.  As already demonstrated

to the Court through Mr. Rivara's failed bankruptcy case, the Rivaras are not capable of selling

the Property in order to fund a reorganization.  Mr. Rivara's bankruptcy case lasted nearly seven

(7) months before being dismissed by the Court, and the entire purpose of Mr. Rivara's

bankruptcy case was to sell the Property for the benefit of creditors.  There is no reason to

believe that the Debtor's Bankruptcy Case will end any differently.  As a result, the Bankruptcy

Case should not be permitted to languish in chapter 11 to the detriment of Wilmington and the

Debtor's other creditors, to the extent any exist.

60.    Thus, Wilmington submits that the Debtor cannot establish that the Property is

necessary to an effective reorganization, thereby providing additional grounds for stay relief in

favor of Wilmington under 11 U.S.C. § 362(d)(2).

## II. **ALTERNATIVELY, DISMISSAL OF THE BANKRUPTCY CASE IS WARRANTED.**

61.     Although Wilmington believes that ample grounds exist for lifting the automatic stay pursuant to 11 U.S.C. § 362(d), Wilmington submits that grounds also exist for dismissal of the Debtor's bankruptcy case.[5]

62.     Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **if the movant establishes cause**. . .

11 U.S.C. § 1112(b)(1) (emphasis added).

63.     Section 1112(b)(4) of the Bankruptcy Code enumerates sixteen (16) examples of cause; however, this list is not exhaustive, and the Court may dismiss a case for reasons that are not specifically enumerated.  See In re SGL Carbon Corp., 200 F.3d 154, 160 (3d Cir. 1999) (noting that the pre-BAPCPA statutory examples of cause are not exhaustive); see also In re Brewery Park Associates, L.P., Case No. 10-11555, 2011 WL 1980289, at *14 (Bankr. W.D. Pa. 2011) ("The term 'cause' is not defined by the statute; the examples provided by subsection 1112(b)(4) are meant to be nonexclusive.").

64.     Under section 1112(b) of the Bankruptcy Code, the movant bears the initial burden of demonstrating by a preponderance of the evidence that "cause" exists to dismiss the case, after which the burden shifts and it becomes incumbent upon the debtor to show that relief

---

[5] Wilmington's preferred relief under this Motion is relief from the automatic stay.  Due to the Rivaras' conduct to date, Wilmington is concerned that a dismissal of the Debtor's bankruptcy case will simply lead to further bad faith tactics by the Debtor or Mr. Rivara to delay Wilmington's foreclosure sale with respect to the Property.

under § 1112(b) is not warranted. See In re Lizeric Realty Corp., 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995).

65.     As is set forth herein, Wilmington submits that sufficient "cause" exists to warrant dismissal of the bankruptcy case under 11 U.S.C. § 1112(b).

**A.      Substantial, Continuing Loss to Estate/Absence of Reasonable Likelihood of Rehabilitation.**

66.     Under 11 U.S.C. § 1112(b)(4)(A), one of the specifically-enumerated examples of "cause" is that there is both a substantial or continuing loss to or diminution of the estate and that there is an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A). As is demonstrated below, here, both prongs of 11 U.S.C. § 1112(b)(4)(A) are satisfied.

**a.      Substantial or Continuing Loss to or Diminution of the Estate.**

67.     The first prong of this section 1112(b)(4)(A) requires a showing of either a substantial or continuing loss to the estate or a diminution of the estate. See 11 U.S.C. § 1112(b)(4)(A). "All that need be found is that the state is suffering some diminution of value." In re Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988); see also In re ABEPP Acquisition Corp., 191 B.R. 365, 367 (Bankr. N.D. Ohio 1996).

68.     Here, as is set forth above, the Debtor has not paid real estate taxes on the Property, and real estate taxes are in arrears by $746,903.98, which continue to accrue interest. Additionally, the Debtor has not insured the Property, thereby forcing Wilmington to put forced place insurance on the Property.

69.     Wilmington submits that these facts alone establish a loss or diminution of the estate, and as a result, Wilmington submits that the first prong of 11 U.S.C. § 1112(b)(4)(A) is certainly satisfied.

### b.    Absence of a Reasonable Likelihood of Rehabilitation.

70.    Under section 1112(b)(4)(A), the movant must also show an absence of a reasonable likelihood that the debtor will be able to rehabilitate.    Importantly, the term "rehabilitate" as used in § 1112(b)(4)(A) is <u>not</u> synonymous with "reorganize." <u>See</u> 7 Collier on Bankruptcy ¶ 1112.04[5][a] at 1112-36.    <u>See also</u> <u>In re Lizeric Realty Corp.</u>, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995); <u>In re Schriock Const., Inc.</u>, 167 B.R. 569, 576 (Bankr. D.N.D. 1994). Instead, a movant must only show that a debtor's financial affairs are such that it cannot re-establish itself on a firm, sound financial basis. <u>See</u> <u>In re Brown</u>, 951 F.2d 564, 572 (3d Cir. 1991) (internal quotations omitted) ("[h]owever honest in its efforts the debtor may be, and however sincere in its motives, the [court] is not bound to clog its docket with visionary or impractical schemes for resuscitation").    Indeed,"[t]he purpose of [section 1112(b) of the Bankruptcy Code] is 'to prevent the debtor-in-possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation.' " <u>In re Adbrite Corp.</u>, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (quoting <u>U.S. Trustee v. GPA Technical Consultants Inc. (In re GPA Technical Consultants, Inc.)</u>, 106 B.R. 139, 141 (Bankr. S.D. Ohio 1994)).

71.    Where there is no possible likelihood of reorganization under the circumstances, dismissal of the case is appropriate even prior to the submission of a plan. <u>See</u> <u>In re Woodbrook Associates</u>, 19 F.3d 312, 317 (7th Cir. 1994) ("A Chapter 11 case can be dismissed at any time. Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired. . . . Creditors, likewise, need not incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated. . . . The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless."); <u>see also</u> <u>In re</u>

Tracey Serv. Co., Inc., 17 B.R. 405 (Bankr. E.D. Pa. 1982); In re Johnston, 149 B.R. 158 (B.A.P.

9th Cir. 1992).  As explained in Collier on Bankruptcy:

> Certainly the ability to confirm a plan is a most significant consideration in the chapter 11 context, but it is a mistake to conclude that consideration of section 1112(b) should begin only after the confirmation process has ended.  Care must be taken so that the court's discretion does not inevitably shelter inefficiency and injustice at the expense of the parties or the chapter 11 process as a whole.

7 Collier on Bankruptcy ¶ 1112.04[5][c].

72.    Here, Wilmington submits that the second element of section 1112(b)(4)(A) is also clearly satisfied.  As set forth above, Mr. Rivara has already demonstrated that a reorganization with this Property is not viable.  As a result, "cause" exists under section 1112(b)(4)(A) to dismiss the Debtor's bankruptcy case.

**B.    The Debtor Filed The Bankruptcy Case in Bad Faith.**

73.    Although "bad faith" is not one of the enumerated elements of "cause" under section 1112(b)(4), courts have regularly found that the filing of a bankruptcy petition in bad faith is grounds for dismissal of the debtor's bankruptcy case.  See, e.g., In re 15375 Memorial Corp., 589 F.3d 605, 618 (3d Cir. 2009); In re SGL Carbon Corp., 200 F.3d 154, 162-64 (3d. Cir. 1999).

74.    Courts have found that the standard for bad faith is the same in the context of a dismissal under section 1112(b) and relief from the stay pursuant to section 362(d)(1).  See In re Porter, 371 B.R. 739, 745 (Bankr. E.D. Pa. 2007) ("courts have held that facts that would justify the dismissal of a bankruptcy case also constitute 'cause' for granting relief under section 362(d)(1)").

75.     As already set forth above, the Debtor's bankruptcy filing was motivated by a two-party dispute between the Debtor and Wilmington.  Indeed, the Debtor filed her bankruptcy petition simply as a tactic to delay and forestall the scheduled foreclosure sale of the Property.

76.     Based upon the foregoing, Wilmington submits that dismissal of the Debtor's bankruptcy case under 11 U.S.C. § 1112(b) is warranted.

## III.    THE 14-DAY STAY UNDER FED. R. BANKR. P. 4001(a)(3) SHOULD BE WAIVED.

77.     Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that an order granting a motion for relief from the automatic stay "is stayed until the expiration of 14 days after entry of the order unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).

78.     For the reasons set forth at length herein, the Property is at risk in the hands of the Debtor, who has failed to pay real estate taxes and to maintain property insurance.  Any delay in allowing Wilmington to proceeding in exercising its rights may greatly prejudice Wilmington.  As a result, Wilmington submits that a waiver of the 14-day stay is warranted.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Wilmington respectfully requests that the Court: (i) grant Wilmington relief from the automatic stay pursuant to 11 U.S.C. § 362(d), and (ii) grant Wilmington such other and further relief as the Court deems just and equitable.

Dated: April 22, 2015
Morristown, NJ                          RIKER DANZIG SCHERER HYLAND
                                        & PERRETTI LLP


                                        By:  /s/ Kevin J. Larner
                                                Kevin J. Larner


                                        *Co-Counsel for Wilmington Trust, National Association, Not in its Individual Capacity But Solely as Trustee Under Greenwich Investors XXXVII Pass-Through Trust Agreement Dated as of July 26, 2011*